Hon. Edward V. Regan State Comptroller Department of Audit and Control
Your counsel asked whether unclaimed credit balances in a cardholder's account with the American Express Company ("AMEX") are "consumer credit balances" under Article 34-A of the New York State General Business Law.
Article 34-A establishes a procedure whereby creditors are required to notify customers of credit balances in their accounts, refund the amount of the balance upon customer request, or if there occur no offsetting purchases, refund the amount to the customer after a designated period of account inactivity. In the event the creditor cannot with due diligence locate the customer, the credit balance must be retained by the creditor in a separate trust account for three years, and thereafter must be transferred to the New York State Department of Audit and Control and held in accordance with the provisions of the New York State Abandoned Property Law (General Business Law, § 715). Article 34-A was part of the Attorney General's 1975 legislative program (Assembly 6406-A) and resulted from an investigation by the Attorney General that revealed a widespread practice by creditors of writing-off unclaimed consumer balances on charge accounts without notice to the consumer (Attorney General's June 20, 1975 memorandum to the Governor on Assembly 6406-A).
The definition of "consumer credit" contained in section 710(3) of the General Business Law was amended this year (Attorney General's Legislative Program No. 19782; L 1982, ch 308) to read as follows:
 "`Consumer credit' means credit extended to a consumer on an account pursuant to a plan under which the creditor may permit the customer to make purchases or obtain loans, from time to time, directly from the creditor or indirectly by use of a credit card, check, or other device, as the plan may provide. The term does not include negotiated advances under an open end real estate mortgage or a letter of credit."
It is clear that under this newly enacted definition the AMEX plan offers "consumer credit" and is accordingly subject to the requirements of Article 34-A.
However, the effect of the new language is prospective from the effective date of the statute and the question remains whether balances existing in AMEX accounts prior to the 1982 amendment are covered by the then applicable definition:
 "`Consumer credit' means credit extended to a consumer on an account pursuant to a plan under which (a) the creditor may permit the customer to make purchases or obtain loans, from time to time, directly from the creditor or indirectly by use of a credit card, check, or other device, as the plan may provide; (b) the customer has the privilege of paying the balance in full or in installments; and (c) a finance charge may be computed by the creditor from time to time on an outstanding unpaid balance. The term does not include negotiated advances under an open end real estate mortgage or a letter of credit."
Your counsel states that it is AMEX's contention that it does not extend "consumer credit" because its contract with cardholders requires that amounts owed be paid in full when due and because it does not assess finance charges on outstanding unpaid balances. We have reviewed the sample "Agreement" between AMEX and its cardholders, forwarded to us by your office. Under the "Agreement" monthly payments for purchases are due immediately upon the customer's receipt of the monthly billing statement ("Agreement", Liability For Charges — Immediate Payment). Any charges not paid within thirty days of the closing date on the statement are considered "delinquent" and if not paid within sixty days of that closing date, "seriously delinquent" ("Agreement", DelinquencyAssessments). If the charges are not paid by the closing date on the first monthly statement sent after the charges have become seriously delinquent, AMEX is authorized to add a delinquency assessment of 1½% of the amount seriously delinquent (ibid.). Thereafter, delinquency assessments will continue to be added to all amounts seriously delinquent (ibid.). We note that AMEX also offers an "Extended Payment Plan" upon customer election, whereby purchases are paid for in installments with assessment of a finance charge ("Agreement", ForExtended Payment Plan Only). It is clear from your letter that your question does not relate to the "Extended Payment Plan".
The definition of "consumer credit" formerly contained in section 710(3) of the New York State General Business Law derived from Regulation Z (Truth in Lending) of the Board of Governors of the Federal Reserve System implementing the Federal Truth in Lending Act (June 26, 1975 Legislative Report of the New York State Bar Association on Assembly 6406-A). The definition of "open-end credit" in the Federal regulations includes in identical language the same three criteria formerly listed in section 710(3) of the General Business Law (12 C.F.R. § 226.2[x], as amended through January 1, 1980). Although the definition of "open-end credit" has since been amended (Federal Register, Vol 46, No 66, p 20893, April 7, 1981), it will be helpful to determine how the Federal government has defined and interpreted the former definition. This is especially relevant since the Federal regulations include provisions similar to Article 34-A of the General Business Law for refunding of consumer credit balances on open-end credit accounts (12 C.F.R. § 226.7[h]).
The Federal regulations specifically deal with a credit plan whereby payments are required to be made in full when due, with no privilege of paying in installments, and calling for the imposition of a service charge periodically on the unpaid balance (12 C.F.R. § 226.401, as amended through January 1, 1980). Under such a plan:
 "When in the ordinary course of business a vendor's billings are not paid in full within that stipulated period of time, and under such circumstances the vendor does not, in fact, regard such accounts in default, but continues or will continue to extend credit and imposes charges periodically for delaying payment of such accounts from time to time until paid, the charge so imposed comes within the definitions of a `finance charge' (§ 226.2(q)) applicable in each case to the amount of the unpaid balance of the account. Under such circumstances the credit so extended comes within the definition of `open end credit' in § 226.2(r), the vendor is a creditor as defined in § 226.2(m), and the disclosures required for open end credit accounts under § 226.7 shall be made."
Further, an unofficial staff interpretation of the Board of Governors of the Federal Reserve System concluded that late payment charges assessed routinely without treating the account in default are to be considered finance charges under Board Interpretation 12 C.F.R. § 226.401 (Unofficial Staff Interpretation No. 1296 of Regulation Z [Truth in Lending], Board of Governors of the Federal Reserve System).
The provisions of the AMEX agreement require that payment be made in full, do not afford the customer the option of paying in installments, and do not call for the imposition of a finance charge on unpaid balances. On its face the plan is not "consumer credit" under section 710(3) of the New York State General Business Law. However, we note that the Agreement provides that after the initial 1½% delinquency assessment, "we will continue to add delinquency assessments on all amounts then seriously delinquent" ("Agreement", DelinquencyAssessments). Since the delinquency assessment is a percentage of the outstanding unpaid balance rather than a flat fee, it resembles a finance charge. Compare the distinction made by the Internal Revenue Service between an interest charge and a service charge (Rev Rul 72-315, 1972-1 CB 49). Generally, interest is the amount one pays for the use of borrowed money or as compensation for the use or forbearance of money (ibid.). A charge that is not paid for the use or forbearance of money, but to compensate the lender for the cost of specific services performed in connection with the borrower's account, does not qualify as interest, but is a service charge (ibid.). A factor distinquishing a service charge from interest is that a service charge is a fixed amount having no relationship to the amount borrowed or the time given to pay, whereas interest is based on the amount deferred and the time of deferral (ibid.). Under this analysis, the AMEX delinquency assessment is comparable to interest, otherwise known as a finance charge.
As applied, there is potential for the AMEX plan to be little different from an installment plan with finance charges. If in practice AMEX continues to bill delinquency assessments as a percentage of the outstanding balance, and does not, within a reasonable amount of time, declare the consumer to be in default and proceed to collect the overdue amount, we believe the plan as applied would amount to an extension of "consumer credit". In reality, the consumer is being given the option of paying the balance in full or in installments, and the assessment is computed the same as interest or a finance charge rather than a service charge. On the other hand, if AMEX consistently applies a standard practice of holding delinquent consumers in default and proceeds within a reasonable time period to collect the overdue amount, this would not constitute an extension of "consumer credit". Certainly, the denial of credit privileges to consumers in default would be evidence of enforcement of an immediate payment plan rather than an installment plan.
As noted, supra, section 710(3) of the General Business Law was amended in 1982 to provide a new definition of "consumer credit". The requirements that the plan offer the customer the privilege of paying the balance in full or in installments and permits the computation of finance charges on outstanding balances have been eliminated. Under this new definition it is clear that the AMEX plan described in this opinion is an extension of "consumer credit" subject to the provisions of Article 34-A of the General Business Law. Consequently, a balance in an AMEX account existing after the effective date of this amendment would constitute a "credit balance" subject to the provisions of Article 34-A. However, as to the applicability of Article 34-A to balances existing prior to the 1982 amendment, we conclude that the AMEX plan amounts to consumer credit when the customer enjoys a de facto option to finance purchases through installment payments. The determination as to whether the AMEX plan is so administered as to provide the customer such an option is a factual one and beyond the scope of this opinion.